OPINION OF THE COURT
Edward H. Lehner, J.
The sole issue before the court in the proceeding, which was submitted on an agreed statement of facts, is whether a 6- by 15-foot room at 128 Central Park South is subject to the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq. [RSL]) when the unit may not be a legal dwelling unit under the City Housing Maintenance Code (Administrative Code, tit D, ch 26, § D26-1.01 et seq.).
FACTS
Under a prior lease the subject room (referred to therein as a maid’s room) was rented to another tenant for storage purposes. In June, 1978 the predecessor landlord leased the room to respondent on a month-to-month basis for her own occupancy, identifying the unit as “Apartment G.R. #4.” The room has no kitchen or toilet facilities except that it does contain a washbasin. Respondent has use of a bathroom in the common hallway on the floor. The room is one of six maids’ rooms in the building, which is a class A multiple dwelling, the certificate of occupancy for which *1046 does not authorize use of this room as a separate unit. However, no violation has to date been placed against the building by reason of the aforesaid use.
This proceeding is based solely on the theory that the room is not subject to the RSL and that the term of respondent’s tenancy therefore expired on. January 31, 1983 by reason of the service of a 30-day notice on December 30, 1982. Thus, the court does not have before it the issue of whether respondent is in violation of the lease nor whether occupancy of a stabilized unit may be terminated because of an alleged illegal use. In this connection it may be noted that subdivision C of section 53 of the Code of the Rent Stabilization Association of New York City, Inc. (the code) permits an eviction where occupancy is “illegal because of the requirements of law and the owner is subject to civil or criminal penalties therefor, or both”.
THE PARTIES’ CONTENTIONS
Petitioner argues that the room is not subject to the RSL because section YY51-3.0 of the Administrative Code provides coverage only for “dwelling units”, and since the room does not have the facilities for a legal “apartment” under the. Housing Maintenance Code due to insufficient space (§ D26-33.01) and the lack of a water closet and bath (§ D26-31.07), it may not be considered a “dwelling unit”.
Respondent counters by claiming that the sections in the Housing Maintenance Code with which petitioner alleges that this room does not conform refer to “apartment[s]”, which are defined differently than “dwelling unit[s]” (see § D26-1.07, subd a, pars 13, 14) and that in fact she occupies a “rooming unit” (§ D26-1.07/ subd a, par 15) the definition of which indicates that it may be located either in a class A or class B multiple dwelling.
DISCUSSION
Resolution of the issue before the court depends on an interpretation of section YY51-3.0 of the Administrative Code which specifies units covered by said law. Subdivision a thereof in essence provides for regulation of “[e]lass A multiple dwellings not owned as a cooperative or as a condominium * * * containing six or more dwelling units” which (1) were completed after February 1, 1947 (with *1047 several listed exceptions) or (2) were decontrolled or exempt from rent control (Administrative Code, tit Y, ch 51, § Y51-1.0 et seq.) for specified reasons which do not include a vacancy of the unit. This building was completed in 1942 and, as petitioner points out in its brief, the unit, pursuant to chapter 371 of the Laws of 1971, is not subject to rent control by virtue of a vacancy thereof subsequent to June 30, 1971.
Hence, if the room is subject to the RSL, it is not by reason of subdivision a of section YY51-3.0, which section reads today (except for relettering) as it read prior to the adoption of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4 [ETPA]). Instead, coverage for units that became vacancy decontrolled under the Rent Control Law by reason of the aforesaid chapter 371 of the Laws of 1971 are subject to the RSL by reason of subdivision b of such section which now provides coverage for: “other housing accommodations in class A or class B multiple dwellings made subject to this law pursuant to the emergency tenant protection act of nineteen seventy-four.” Said subdivision was added to the RSL by virtue of section 7 of chapter 576 of the Laws of 1974 which provided that in the City of New York the RSL shall govern units subject to the ETPA. Section 2 of said chapter specifically made vacancy decontrolled units subject to the ETPA.
The above-quoted language of subdivision b is identical to that adopted in 1974 except for the addition in 1981 (L 1981, ch 675, § 1) of the words “in class A or class B multiple dwellings”. Said addition was in response to the decision of the Court of Appeals in La Guardia v Cavanaugh (53 NY2d 67) which held that units in class B multiple dwellings are not covered by the RSL. In light of the Legislature’s action, it is clear that if the building involved herein were a class B multiple dwelling, the subject unit would be covered. It is interesting to note parenthetically that not only has the Legislature overturned said decision, but also the governmental policy of discouraging the maintenance of single-room housing referred to in said opinion is also changing as is evidenced by the recent legislative amendment to the J51 tax abatement program.
*1048 This complex maze of statutes (apparently not made any simpler by the law enacted this week by the Legislature) results in coverage for units referred to as “housing accommodations” which is the term used in the Emergency Housing Rent Control Law (L 1946, ch 274) and the Local Emergency Housing Rent Control Act (L 1962, ch 21). In the former, the term is defined in pertinent part as follows: “Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place, boarding house, lodging house or hotel”. (L 1946, ch 274, §2.)
A similar definition is contained in subdivision e of section Y51-3.0 of the Administrative Code.
CONCLUSION
Under the aforesaid definition the court concludes that this room is a housing accommodation brought under the RSL by the ETPA as such unit was covered by rent control prior to the vacancy. Although not argued by petitioner, it is clear that this situation differs from that in La Guardia v Cavanaugh (supra). There units in pre-1947 class B multiple dwellings were ruled not covered by the language of subdivision b because of the clear exclusion of same in subdivision a of section YY51-3.0, which refers only to class A multiple dwellings, the court finding that (53 NY2d, p 79) “the express inclusion of a particular thing implies the omission of others”.
In the case at bar the court can find no language in subdivision a from which it could even infer that to be covered a unit had to comply with the definition of an apartment in the Housing Maintenance Code.
The court further concludes that it need not in this proceeding determine the legality of respondent’s occupancy as regulation under the RSL is not dependent on such status. In Mandel v Pitkowsky (102 Misc 2d 478, affd 76 AD2d 807), loft units in buildings where residential occupancy was not then legal were stated to be subject to the RSL. (See, also, Scocozza Studio Assoc. v Thompson, NYLJ, April 29, 1980, p 4, col 1 [App Term, 1st Dept].)
*1049 Petitioner seeks to distinguish Mandel (supra) by claiming that it, as a successor landlord with no knowledge of the original leasing to respondent, cannot be estopped from terminating her tenancy. First, the court observes that knowledge of a party does not affect whether a unit is covered by the RSL. A unit is or is not depending on its status. In any event, petitioner is charged with knowledge as when it acquired the building it had constructive notice of the alleged illegal occupancy as the lease attached to the agreed statement of facts shows the leasing of this “maid’s room” to respondent. (See Tehan v Peters Print. Co., 71 AD2d 101.)
In light of the above, the petition is dismissed.