OPINION OF THE COURT
Edward H. Lehner, J.
The basic question raised in this holdover proceeding based on nonprimary residence is whether an apartment used for sleeping on the average of only one or two nights per week may nonetheless be deemed a primary residence under the rent control law when the tenant spends all other sleeping *98 hours at another location. Under the extremely unusual lifestyle of respondent, the court answers the question in the affirmative.
FACTS
Respondent resided in the subject apartment at 341 East 82nd Street in Manhattan with her husband for many years until his death in February 1983. She has acknowledged to thereafter sleeping in the apartment no more than once or twice per week. She works as a typesetter operating a business with her sister out of an apartment at 211 East 53rd Street. She testified to working at the business 17 hours per day, six days per week, generally always on duty during the night hours, and getting no more than two to three hours of sleep per 24-hour period. She stated that she sleeps on a convertible couch in the bedroom of the apartment of the business. Other than the one bedroom, which was sparsely decorated, the balance of the apartment contains equipment, furniture and supplies for the business. Respondent has no furniture there and only a few changes of clothing, some toiletries and a small musical instrument. Her sister, who owns all of the furniture in the apartment, occupies it as her residence. The apartment on 82nd Street is apparently furnished as it was at time of the death of respondent’s husband, and contains all of respondent’s possessions other than the aforesaid.
None of the testimony of respondent was in any way contradicted, and was supported by testimony that showed that customers of the business obtained overnight typesetting and that respondent could be found working at various hours, including late at night and early in the morning. Tax returns, motor vehicle registration, bank statements, and a voter registration card all show respondent’s address as the apartment on 82nd Street.
Thus, respondent, a 59-year-old widow, lives what appears to be a rather bizarre existence, even for this modern society where workaholics are not uncommon. However, since there was no conflicting evidence presented, the court accepts respondent’s testimony with respect to her living and working habits.
DISCUSSION
The issue thus before the court is whether, under the *99 foregoing circumstances, the 82nd Street apartment may be deemed respondent’s primary residence.
Initially, it should be observed that the burden is on the landlord to establish that the tenant maintains a primary residence at some place other than the subject premises. (Katz v Lubotta, NYLJ, May 20, 1985, p 13, col 6 [App Term, 1st Dept].) Thus, to prevail, petitioner must establish that the 53rd Street business apartment is her primary residence.
Although the goal of the primary residence law was to remove "the benefits of rent control with respect to * * * underutilized housing accommodations” (Legislative memoranda, 1971 McKinney’s Session Laws of NY, at 2402), such result only occurs if the tenant does maintain a primary residence elsewhere.
Here, clearly there is an underutilized unit, but such unit is not respondent’s secondary residence. Primary residence has been said to be "basically a determination of the intention of the tenant” (Heller v Joy, NYLJ, Feb. 22, 1984, p 6, cols 1, 2 [Sup Ct, NY County]). On analysis, primary residence is closely related to the concept of domicile.
Prior to the enactment of the Omnibus Housing Act (L 1983, ch 403), determinations of primary residence in rent-controlled apartments were made by the city rent agency. New York City Rent and Eviction Regulations § 18 (b) issued by the agency provided that the rent administrator was not authorized to find that an apartment was a tenant’s primary residence unless "the tenant is either domiciled * * * at the claimed housing accommodation or * * * spent an aggregate of more than one hundred eighty-three days in the preceding calendar year * * * at such accommodation” (emphasis supplied). Thus, it was administratively recognized that a tenant need not spend a majority of time at an apartment in order for the unit to retain controlled status, but the tenant could remain protected if it were established that the apartment was his or her domicile. A similar provision is contained in Code of the Rent Stabilization Association of New York City, Inc. § 54 for units covered by the Rent Stabilization Law.
In Coronet Props. Co. v Brychova (122 Misc 2d 212 [Civ Ct, NY County 1983], affd on opn below 126 Misc 2d 946 [App Term, 1st Dept 1984]) the tenant spent all but a handful of days traveling to various professional singing engagements. In finding the apartment to be the tenant’s primary residence, the court said (122 Misc 2d, at p 213) "her use of this *100 apartment for her piano and personal possessions, and most importantly, her intent to reuse it when her professional life allows, are sufficient to establish it as her legal domicile.”
Although there is a clear difference between the foregoing case and that at bar in that in the former the tenant had no other residence in which she spent significant time, while here respondent spends almost all her time at the 53rd Street apartment, the case illustrates the importance of the concept of domicile to the question before the court, as the essence of the finding in Brychova (supra) was that the subject unit was the domicile of the tenant. In State of New York v Collins (78 AD2d 295 [3d Dept 1981]), it was said that "where a statute prescribes 'residence’ as a qualification for a privilege or the enjoyment of a benefit, the word is equivalent to 'domicile’ ” (p 297) and that the "use of the additional word 'legal’ in defining residence merely reinforces this conclusion” (p 297).
Domicile is a matter of intention. A change of residence without intent to change domicile does not affect domicile (Matter of Minsky v Tully, 78 AD2d 955 [3d Dept 1980]; Matter of Bodfish v Gallman, 50 AD2d 457 [3d Dept 1976]), which has been defined as the location where a person "intends to make his home indefinitely” (Matter of Brunner, 41 NY2d 917, 918; see also, Matter of Miller v Police Commr. of City of N. Y., 26 AD2d 803 [1st Dept 1966]). The test of domicile has been said to be " 'whether the place of habitation is the permanent home of a person, with the range of sentiment, feeling and permanent association with it’ ” (Matter of Minsky v Tully, supra, p 955). Without more, the fact that one absents himself from his established domicile for an extended period of time does not prove that a change of domicile has occurred. (Matter of Chrisman, 43 AD2d 771 [3d Dept 1973].) The "evidence to establish the required intention to effect a change of domicile must be clear and convincing” (Matter of Minsky v Tully, supra, p 955). A change of residence lacking the requisite intent to abandon the prior residence " 'leaves the last established domicile unaffected’ ” (Matter of Chrisman, supra, p 771).
Applying the foregoing rules, it is evident that respondent’s domicile remains in the apartment she shared for years with her husband. The fact that since his death she has devoted so much time to her business that she is so rarely at the subject apartment does not establish a change. All of the documentary evidence showing the apartment as her residence, as well as the fact that almost all of her furniture and possessions are *101 maintained there, demonstrate that there has been no change in domicile. Further, there is no proof that retention of this apartment as respondent’s domicile is a fiction or device employed to enable her to retain the benefits of rent regulation.
CONCLUSION
Accordingly, the court finds the subject premises to be respondent’s primary residence, and the petition is therefore dismissed on the merits.