OPINION OF THE COURT
J. Emmett Murphy, J.
This is a summary proceeding in holdover to recover possession of a residential apartment at 560 Tuckahoe Road in Yonkers. Petitioner contends respondents do not use the apartment as their primary residence and are therefore not entitled to the protection of the Emergency Tenant Protection Act of 1974 (ETPA) (McKinney’s Uncons Laws of NY § 8625 [a] [11][L 1974, ch 576, § 4 (§ 5 [a] [11])]). This proceeding was commenced after expiration of the lease and on 30 days’ *781 notice, petitioner contending that he is not required to offer respondents a renewal lease. The petition is granted after trial.
Primary residence cases turn on a detailed analysis of the facts. (Cf., Kastner & Zuckerbrod, Primary Residence Litigation — Analysis of Emerging Case Law, NYLJ, Mar. 25, 1987, at 1, col 3; Mar. 26, 1987, at 4, col 1.)
In August of 1978, respondents made application to rent the subject apartment, listing respondent Bonito as respondent Giananti’s fiancé. Both signed a two-year lease which was renewed periodically. In June and July of 1984, respondents wrote to petitioner requesting permission to sublet the apartment "to family,” stating as the "Reason for Subletting: We bought a co-op. (Bonito and Giananti).” The proposed termination date for the sublease was August 31, 1984, the termination date of the then current lease.
As "the tenant’s address for the length of the sub-lease,” respondents listed "11 Bronx River Road, Yonkers, NY.” It is not disputed by respondents that respondent Bonito did, at about that time, purchase a two-bedroom cooperative apartment at that location. Petitioner signed a written refusal to consent to the sublease, stating "you are a non-primary resident because you purchased a co-op * * * and are planning on living there, rather than returning to your apartment.” Despite this exchange, and after a substantial delay, in June of 1985 petitioner signed a new RTP 8, renewing respondents’ lease for a two-year term commencing September 1, 1984.
In June, July and August of 1984, an offering plan was purportedly circulated among the tenants of the subject complex. The timing of petitioner’s offer to sell, and respondents’ attempted but rejected acceptance, is in dispute. It is, or may be, the subject of another suit. No stay of these proceedings for possession has been exhibited to the court.
In June of 1986, an action to evict for an illegal sublet was commenced and later withdrawn. As noted above, this proceeding was commenced after expiration of the latest lease. (ETPA § 10-a, as added by L 1983, ch 403, § 57, McKinney’s Uncons Laws of NY § 8630-a.)
It is undisputed that respondent Giananti lived in the subject apartment until some time in 1984 or 1985. That respondent Bonito had theretofore run a general contracting business from a portion of the apartment is also undisputed.
As evidence of nonprimary residency, petitioner established *782 respondents’ statement that "we purchased a co-op,” which is approximately 10 minutes away from the subject premises; the attempted sublease; the lack of any phone in the apartment for the past two years; and the fact that the only telephone in the new co-op, purportedly used solely as an office for respondent Bonito’s business, is unlisted. Petitioner also established that respondent Bonito owns a private house in Mount Vernon, approximately 10 or 15 minutes away from the subject premises.
The manager and the superintendent of the subject complex testified to numerous unsuccessful attempts within the past year to "check on” respondents’ presence by ringing and knocking at the door downstairs from the apartment at various times of the day and night, as late as 9:15 p.m. (Where, as here, a landlord attempts to evict apparently protected tenants of a residential complex which has recently converted to cooperative apartments, such allegations by the landlord will be subjected to a scrutiny which is mindful of his pecuniary interest in eviction, i.e., the difference between the inside and outside price of the shares.)
A neighbor in the subject apartment complex testified that she saw respondents regularly until some time in 1985. She would see respondent Giananti 3 or 4 times a week on the premises, and respondent Bonito picking up mail 2 or 3 times a week. In September of 1985, she moved to the subject apartment building. She testified that respondents did not live there, and that two girls lived in the apartment at that time. She said that they moved out shortly thereafter.
A representative of Consolidated Edison, stipulated to be an expert in interpreting utility bills, testified that he had examined the gas and electric bills for the subject apartment and that, except for a three-month period in 1984, recent bills indicated "no or minimal occupancy,” as in an apartment used only sporadically, or "only for sleeping.” He also stated that the utilities had been shut off for nonpayment on September 18, 1986, and were not reconnected until October 7, 1986, upon payment of the bill. There had been "almost no use” immediately prior to the disconnect.
Respondent Bonito did not testify.
Respondent Giananti testified, but neither her testimony nor her manner of testifying assisted her case. She stated that the apartment has been her primary residence for approximately nine years, and all her belongings are there. She *783 stated she has few appliances; leaves early, and frequently returns late; doesn’t answer her door unless it is someone she expects; lives on a largely "dairy diet;” and visits her mother in Queens on weekends. She states she has been respondent Bonito’s secretary for 10 years, and that he used the apartment as his office until he moved the office to the new co-op, but that he never lived in the subject apartment. They are very friendly. She offered medical bills, a driver’s license and an income tax return listing the subject apartment as her residence.
On cross-examination, she admitted that the business telephone at the co-op is unlisted, attributing this to crank calls. She stated she has been at the co-op very late, but never slept there. Only one bedroom is an office, the rest of the co-op being furnished as a residence. (This is similar to the arrangement they originally enjoyed at the subject apartment.) She admitted that Mr. Bonito has an equipment yard and an office trailer, with a telephone, nearby in The Bronx. Although his business letterhead lists the Mount Vernon address as the business address, she stated that the house in Mount Vernon is really Mr. Bonito’s mother’s house. Although she is his colessee in the subject premises, listed him as her fiancé, and has served as his secretary, girl Friday and office manager for 10 years, she did not discuss the case with him, hasn’t discussed with him where he sleeps, doesn’t know where he sleeps, and assumes he sleeps in his mother’s house, which also contains the telephone listed on his business letterhead.
She also stated that respondent Bonito pays her rent of $362 per month at the subject premises and some of her bills. This is why she testified she makes $350 per week, while her tax return and W-2 form show an annual income of $5,400. She is not a tax attorney. She used a flashlight and candles while the utilities were off. It would not surprise her to learn that as much as $50,000 could separate the inside price of the subject premises and its current market value. She thinks the letterhead should be updated.
A witness called by respondents testified respondent Giananti lives over her. She hears noises once or twice a week in the apartment, and used to hear sounds from the apartment more frequently 2 or 3 years ago. She heard more activity after the trial started. (Nonprimary residency is, however, not curable; Lufkin v Drago, 126 Misc 2d 177, affd 129 Misc 2d 1108.)
*784 The question of primary residence is raised by nonuse or absence, but turns on intent. As evidence of nonuse or absence grows, culminating in the sublease, so will an owner’s suspicion that he is not housing a resident, but merely sharing his investment with an under-contributing partner.
Residents, on the other hand, are not to be subjected to curfews and check-ins. They may live alone and work long hours (cf., Sarraf v Szunics, 132 Misc 2d 97), travel on business (Coronet Props. Co. v Brychova, 122 Misc 2d 212, affd 126 Misc 2d 946), accept temporary employment or assignment (Kamvan Co. v Rammel, 130 Misc 2d 675) and not fear the loss of their home. They may sublease if not for profit (ETPA § 10-a) to help keep their home while they are temporarily away. They may also adopt life-styles which lead to the maintenance of two residences where tradition leads us to expect to find one. (Cf., Newport Apts. Co. v Schechter, 124 Misc 2d 760, affd 127 Misc 2d 793.) What they may not do is dabble in regulated residential apartments, inserting an illegal marketplace between the legitimate owner and a prospective or actual resident. Such nonresident "investors” may be evicted either by the landlord, or by a resident subtenant (cf., e.g., Rocconi v Strong, 132 Misc 2d 190) for whom all conversion plans would otherwise be eviction plans.
The burden is on the landlord to prove that this apparently regulated apartment is not a primary residence and, therefore, fits within the exception provided by ETPA § 5 (a) (11) (cf., e.g., Sarraf v Szunics, 132 Misc 2d 97, supra). His burden is to establish that it is not the primary residence of either tenant, since both are named in the lease, and each could invite the other to live there (Real Property Law § 235-f). To succeed, he must establish facts from which the court will infer that the tenant does not intend presently to occupy the premises as a primary residence, nor does he or she intend to resume such occupancy in the foreseeable future, after a temporary absence.
On considering the totality of the circumstances established by petitioner, the court concludes that this burden has been met. Respondent Bonito virtually conceded nonresidence by electing not to testify in the face of petitioner’s evidence and his cotenant’s testimony that he had never lived in the apartment. Petitioner established, as to both respondents, a sharply diminished presence, following a request to sublet because "we bought a co-op.” Also established is a substantial presence in another cooperative apartment nearby, utility *785 consumption indicating little or no use, lack of a telephone at the apartment, only an unlisted telephone at "the business,” and a recent utility shutoff of almost three weeks’ duration.
Respondent Giananti’s testimony did not shift the burden of going forward back to petitioner. To the contrary, its contradictions implausibilities and lack of candor confirmed petitioner’s contention that the apartment is no longer a residence to either tenant.
Just as primary residence may be found despite the tenant’s absence, nonprimary residence may be found despite some presence by the tenant. Just as the landlord’s financial interest will be borne in mind while weighing his evidence, the court will not weigh the tenant’s evidence in a vacuum. Once the landlord’s evidence justifies the conclusion that this is not a primary residence, the tenant’s credibility will be of particular importance to the court in determining this largely subjective question.
Here, respondent Giananti’s testimony did not rise to a level of quality which would support the conclusion of primary residence in the face of petitioner’s evidence to the contrary.
Thus, the testimony of petitioner’s private investigator, held back at the trial for improper rebuttal and, therefore, excluded, proved unnecessary.
The petition is granted.