PETER J. SHARP et al., as Trustees Under an Instrument Dated May 15, 1979, for the Benefit of RANDALL A. SHARP, Respondents, v ELISEO MELENDEZ, Appellant.

First Department, August 11, 1988

## APPEARANCES OF COUNSEL

*Howard A. Wenig* of counsel *(Gary M. Rosenberg* and *Susan R. Lipp* with him on the brief; *Rosenberg & Estis, P. C.,* attorneys), for respondents.

*Errol A. Brett* and *Robin A. Bernstein* of counsel *(Schwarz-feld, Ganfer & Shore,* attorneys), for appellant.

**OPINION OF THE COURT**

KASSAL, J.

The issue before us is whether two noncontiguous apartments leased by defendant tenant comprise a single residential unit and, as such, constitute a primary residence subject to the protection of the rent regulatory statutes.

On or about October 19, 1973, defendant tenant, Eliseo Melendez, Jr. (tenant), entered into a two-year lease with plaintiffs' predecessor in interest, 15 West 72nd Street Associates, for apartment 2-H, located at 15 West 72nd Street in Manhattan. The lease, which ran for a term commencing November 1, 1973 and ending October 31, 1975, contained a rider with a dotted line after the phrase, "The demised premises are to be occupied by", upon which was typed "Mr. Melendez".

Shortly after taking possession of the one-bedroom apartment, tenant, who is a diabetic, had a friend, Jaime Berrios, move in to assist him in administering his daily insulin injections. Berrios's tenancy was known to, and acquiesced in, by the landlord, as evidenced by the three-year renewal lease tenant entered into with 15 West 72nd Street Associates on October 29, 1975, which named both him and Berrios. The renewal lease term was from November 1, 1975 to October 31, 1978.

In early 1978, Berrios moved from the apartment, and tenant asked his parents, then residing in Puerto Rico, to come to New York to assist him with his illness. The care he required consisted of help with his daily insulin injections, preparation of special meals, and availability to take him to the hospital in case of medical emergency. Tenant's parents, Eliseo Melendez, Sr. and Laura Melendez, agreed to assume these responsibilities, and in May 1978 moved to New York and into the subject apartment. Once again reflective of tenant's full disclosure to the landlord, and the latter's approval, tenant's second renewal lease, signed October 18, 1978, no longer contained Mr. Berrios's name as cotenant. Instead, the lease, which ran from November 1, 1978 through October 31, 1981, bore solely defendant's name, as had his original lease, and, significantly, the portion of the lease reading "The demised premises are to be occupied by", was now completed

with the typed words, "Eliseo Melendez and Family". It was signed by Church Management Corp., as agent for the landlord, 15 West 72nd Street Associates.

Because the one-bedroom apartment was too small for tenant to comfortably live there with his parents, he requested a two-bedroom apartment in the building shortly after his parents moved in. The landlord informed him that none was then available, but that tenant would be notified if and when one became vacant. In the meantime, tenant took another apartment three blocks from the subject premises during the summer of 1978. Within two months of his having done so, the landlord contacted tenant to inform him that while a two-bedroom apartment was still unavailable, he could lease a studio apartment, apartment 9-U, in the building.

Tenant accepted the landlord's offer, and on October 21, 1978, signed a second lease with Church Management Corporation, pursuant to which he would occupy apartment 9-U for a period commencing December 1, 1978 and ending November 30, 1980. Upon inquiring whether his parents could be named as signatories to the lease for apartment 2-H, defendant was advised by the landlord that this would not be necessary. Tenant's leases for both apartments continued to be renewed by lease extension agreements. For apartment 2-H, the subject of the within action for declaratory judgment brought on or about February 25, 1985, the most recent lease renewal agreement covered the period November 1, 1984 through October 31, 1986. It was executed by "Church Management, A Division of Peter Sharp & Co., Inc. As Agent For: Randall A. Sharp."

In seeking a declaration as to the legal rights and relations of the parties with respect to apartment 2-H, plaintiffs argued that defendant did not maintain apartment 2-H as his primary residence. After a trial, the Judicial Hearing Officer agreed, finding that tenant maintained his primary residence in apartment 9-U and, accordingly, declaring that apartment 2-H was not tenant's primary residence and that said premises were therefore not subject to the Rent Stabilization Law of 1969, as amended by the Emergency Tenant Protection Act of 1974 and the Omnibus Housing Act of 1983.

We reverse. In a nonprimary residence case, the burden is on the landlord to establish that the tenant maintains a primary residence in a place other than the subject premises. (*Katz v Lubotta*, NYLJ, May 20, 1985, at 13, col 6 [App Term, 1st Dept], *lv denied* Dec. 12, 1985, No. M-5605.) This burden

was not met here, where tenant and his parents, all called as witnesses for plaintiffs, gave extensive and persuasive testimony establishing that tenant in fact maintains apartments 2-H and 9-U as a single residential unit.

Among the uncontested testimony in support thereof was that tenant owns all of the furniture in the subject apartment, 2-H, where he receives mail and takes daily meals, as well as daily insulin injections. In addition, the testimony revealed that defendant sleeps on a sofabed in apartment 2-H when feeling ill, which may occur between 5 and 10 times per month, to be near his parents if a medical emergency arises. Mr. and Mrs. Melendez sleep in the bedroom of apartment 2-H, where they have resided for nearly a decade. Tenant's usual sleeping area is located in the studio apartment, 9-U. Although apartment 9-U also contains a kitchen, no meals are prepared there.

The use of two noncontiguous apartments as a single residential unit subject to the rent regulatory statutes has gained increasing recognition in recent years. In *Page Assocs. v Dolan* (NYLJ, Nov. 8, 1984, at 4, col 2 [App Term, 1st Dept], *lv denied* Sept. 12, 1985, No. M-3376), for example, a case also involving a nonprimary residence challenge, it was held that a second noncontiguous apartment leased to tenant so that her legal ward and nephew could have his own bedroom, was to be considered jointly with the first apartment as a single residential unit. Similarly, in *Tracy Assocs. v Faust* (NYLJ, Apr. 15, 1987, at 14, col 2 [Civ Ct, NY County]) the court found that the tenants' leasing of a second apartment in the building in order to obtain additional living space, did not give rise to a nonprimary residence challenge, because the "apartment was rented with the express intention of its being used as an extension of the primary residence, as if they were in fact one unit."

Critical to a determination of whether two nonadjacent apartments will constitute a single residential unit, is the intention of the tenant *(Sarraf v Szunics,* 132 Misc 2d 97, 99), a factor to be determined by the use the tenant makes of the premises. *(224 E 18th St. Assocs. v Sijacki,* 138 Misc 2d 494, 498.)* Also relevant is the landlord's knowledge of, and acquiescence in, the arrangement. *(See, Page Assocs. v Dolan, supra; Tracy Assocs. v Faust, supra.)*

In the case at bar, there is ample evidence, both in the testimony and in the lease history for the two apartments,

that the landlord was fully aware of tenant's living arrangement and, indeed, that the landlord participated in tenant's expansion of his limited residential space, by notifying him of the availability of the studio apartment. Although the record is unclear as to when plaintiffs became successors to tenant's original landlord, it is well recognized that "the transferee of real property takes the premises subject to the conditions as to tenancy, including any waiver of rights, that his predecessor has established if the transferee has notice of the existence of the leasehold". *(52 Riverside Realty Co. v Ebenhart,* 119 AD2d 452, 453; *Radcliffe Assocs. v Greenstein,* 274 App Div 277; 33 NY Jur, Landlord and Tenant, § 74, at 376.)

For all of these reasons, apartments 2-H and 9-U are deemed to constitute a single residential unit and tenant's primary residence, and remain subject to the rent regulatory statutes.

Accordingly, the amended order and judgment, Supreme Court, New York County (William E. Ringel, J.H.O.), entered on December 30, 1987, which, *inter alia,* declared that defendant tenant does not occupy the subject apartment as his primary residence and that said premises are therefore exempt from the Rent Stabilization Law of 1969, as amended by the Emergency Tenant Protection Act of 1974 and the Omnibus Housing Act of 1983, and which awarded possession thereof to plaintiff, should be reversed, on the law and the facts, and apartments 2-H and 9-U declared a single residential unit constituting tenant's primary residence and subject to the aforementioned rent regulatory statutes, without costs or disbursements.

KUPFERMAN, J. P., ROSENBERGER, ELLERIN and SMITH, JJ., concur.

Order and judgment (one paper), and an amended order and judgment (one paper), Supreme Court, New York County, entered on December 2, 1987 and December 30, 1987, respectively, unanimously reversed, without costs and without disbursements, on the law and the facts, and apartments 2-H and 9-U declared a single residential unit constituting tenant's primary residence and subject to the Rent Stabilization Law of 1969, as amended.