In the Matter of 10 WEST 66TH STREET CORPORATION, Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL et al., Respondents.

First Department, November 24, 1992

144

APPEARANCES OF COUNSEL

*Morton H. Rosen* of counsel *(Bruce A. Cholst* and *Margaret E. Barton* with him on the brief; *Rosen & Tierman,* attorneys), for appellant.

*Dennis B. Hasher (Christina S. Ossi* with him on the brief), for New York State Division of Housing and Community Renewal, respondent.

*Allen H. Brill* of counsel *(Anthony M. Benjamin* with him on the brief; *Brill & Meisel,* attorneys), for Henry Bolan, respondent.

## OPINION OF THE COURT

RUBIN, J.

At issue in this proceeding is the right of a shareowner of a cooperative corporation to receive a renewal lease to space for which no shares have been allocated. It is the tenant's claim that this space, designated apartment 2B and described as a "maid's room", comprises part of his residence.

This matter is before us to review a decision of Supreme Court which, pursuant to CPLR Article 78, confirmed the determination of respondent Division of Housing and Community Renewal (DHCR) reversing a finding by the District Rent Administrator that apartment 2B is not subject to regulation under the Rent Stabilization Law (Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-501 *et seq.,* as amended by L 1985, ch 907, §1 [formerly section YY51-1.0 *et seq.]).* Presented for review are the propriety of the District Rent Administrator's ruling that apartment 2B, the "maids unit", is not subject to the rent regulation statute, the Commissioner's ruling that DHCR is without authority to act in

this controversy and Supreme Court's ruling, *inter alia,* confirming the Commissioner's determination.

The facts, as stated by Supreme Court, are as follows. Since early 1974, respondent Henry Bolan has resided in apartment 4G. Bolan entered into a lease for apartment 2B with Park Ten Associates (presumably the former owner of the building) for a term beginning October 1, 1980 and ending September 30, 1983. The apartment is described in the certificate of occupancy as a "maid's room" and "consists of one room, a closet, and a bathroom containing a wash basin and a stall shower, but no bathtub; there is no kitchen nor any cooking facilities." The court further observed, "The Offering Plan recites that '[t]here are seven maids' rooms on the second floor of the Building, all of which are presently occupied on a month-to-month basis' ", and "The sponsor did not allocate shares of stock to apartment 2B." On or about May 1, 1981, Bolan exercised the right to purchase the shares allocated to apartment 4G and currently occupies that unit pursuant to a proprietary lease. Upon the expiration of the lease to apartment 2B, the cooperative corporation refused to issue a renewal lease, and Bolan initiated a proceeding before respondent DHCR in response to efforts by the cooperative corporation to recover possession of the unit.

The District Rent Administrator issued a ruling dated March 6, 1987 which states, "The subject unit is not subject to the Rent Stabilization Law and is, therefore, not under the jurisdiction of this Agency. The parties involved are directed to a court of competent jurisdiction to settle this matter." Within a week, respondent Bolan completed a petition for administrative review (PAR) of the District Rent Administrator's order, contending that "Apartment 2B is an integral part of and essential to my residence at the Building" and that it is "currently subject to the Rent Stabilization Law of 1969 as amended". Therefore, Bolan contends, the cooperative corporation is obligated to issue him a renewal lease.

In deciding the PAR, the Commissioner of DHCR, in a contradictory ruling, stated he "is of the opinion that this petition should be granted in part" but agreed that the agency "is without power to resolve the controversy between the parties." The Commissioner ruled that the District Rent Administrator's determination was erroneous insofar as it found the apartment exempt from the Rent Stabilization Law. The Commissioner concluded that the operative question is whether apartment 2B is occupied by the tenant as his pri-

mary residence, an issue which is required to be resolved "by a court of competent jurisdiction". The Commissioner then proceeded to order the cooperative corporation to commence an appropriate action within 60 days or issue a renewal lease to Bolan.

■ At this juncture, several observations are in order. First, if, as the Commissioner determined, the agency lacks power to decide the controversy—because the issue is one of primary residence solely within the province of the court (Rent Stabilization Law § 26-504 [a] [1] [f])—the agency is likewise without authority to direct the parties to take any action. Also, because there is no impediment to the commencement, by the tenant, of a proceeding to obtain a judgment declaring his rights in the subject unit, there is no necessity for the administrative order directing the cooperative corporation to commence an action. Finally, in view of DHCR's determination that it lacks jurisdiction, the agency's conclusions of law are merely advisory and need not be accorded any weight by the court *(compare, Matter of Howard v Wyman,* 28 NY2d 434, 438).

The cooperative corporation commenced the instant CPLR article 78 proceeding to review the administrative determination by respondent DHCR. The notice of petition indicates that petitioner sought to annul and vacate the order of the Commissioner to the extent that it granted respondent Bolan's PAR and directed petitioner to issue a renewal lease to Bolan for apartment 2B. Petitioner argued that, as a matter of law, the maid's room is not subject to the Rent Stabilization Code (9 NYCRR 2520 *et seq.)* because it is located in a building owned by a cooperative apartment corporation.

In deciding the matter, however, Supreme Court adopted the rationale stated by the Commissioner that determination of this controversy turns on the issue of primary residence. The court reasoned: "It is beyond cavil that two non-contiguous apartments may constitute a tenant's primary residence depending upon the intention of the tenant and the use to which the apartment is put *(Sharp v. Melendez,* 139 AD2d 262 [1st Dept. 1988], *app. den.* 73 NY2d 707 [1989]), even if the maid's room would not, standing by itself, qualify for a [certificate of occupancy] as a residence [sic] dwelling unit *(128 Central Park South Associates v. Cooney,* 119 Misc.2d 1045 [Civ. Ct. N.Y.Co., 1983, Lehner, J.]). Here, petitioner has failed to raise any triable issue of fact as to Bolan's intention and use of apartment 2B as his primary residence along with

apartment 4G. Moreover, the failure of petitioner to serve a notice of intention to commence a proceeding to recover possession of apartment 2B within the requisite window period of 120-150 days prior to the expiration of the lease based on nonprimary residence precludes the landlord from refusing to renew the lease to apartment 2B on that ground *(Golub v. Frank,* 65 NY2d 900 [1985]; *Crow v. 83rd St. Associates,* 68 NY2d 796 [1986])."

Supreme Court dismissed the petition and directed petitioner to renew the lease to apartment 2B "so long as Bolan occupies apartment 4G as his primary residence." In addition, the court awarded respondent Bolan reasonable counsel fees incurred in litigating this matter and in pursuing an administrative remedy before respondent DHCR.

■ In a proceeding to review the determination of an administrative agency brought pursuant to CPLR 7803 (3), inquiry is limited to "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (including any penalty imposed). The proceeding is a special proceeding (CPLR 7804 [a]) within the purview of CPLR article 4. Where no triable issue of fact is raised, a summary determination is appropriate based on the pleadings, papers and admissions in accordance with the standards for granting summary judgment (CPLR 409 [b]; *Matter of Port of N. Y. Auth. [62 Cortlandt St. Realty Co.],* 18 NY2d 250).

■ It has already been observed that DHCR's conclusion that it lacks authority to determine the controversy between the cooperative corporation and its tenant is entirely correct. The only question directly presented by the petition is whether the determination should be annulled to the extent that it granted, in part, Bolan's PAR and directed the cooperative corporation to issue a renewal lease. Confining the controversy to this issue, its adjudication is axiomatic. Having decided that DHCR has no power to entertain this matter, any order purported to be issued by the Commissioner is ultra vires and should be vacated.

By passing upon the merits of this case, Supreme Court treated the matter as a plenary action, *sub silentio* converting the proceeding into an action for declaratory judgment (CPLR 103 [c]; *Matter of Kovarsky v Housing & Dev. Admin.,* 31 NY2d 184, 192) and summarily granting judgment in favor of respondent Bolan based upon the record before it (CPLR 3212

[b]). The court employed the same reasoning advanced by the Commissioner—that termination of (or refusal to renew) a lease for space which the tenant contends comprises part of his residence raises the issue of primary residence. The court then concluded that the failure of the cooperative corporation to serve notice of its intention not to renew the lease (Rent Stabilization Code [9 NYCRR] § 2524.2 [c] [2]) "precludes the landlord from refusing to renew the lease".

While it is agreed that two noncontiguous units subject to control by the laws regulating rent may comprise a single residential unit (Sharp v Melendez, 139 AD2d 262, supra), the situation is quite different where, as here, one unit is asserted to be subject to regulation and the other is decontrolled due to conversion of the building to cooperative ownership. It is well settled that someone who voluntarily embraces the cooperative form of home ownership subjects himself to the rules by which it is organized (see, Weisner v 791 Park Ave. Corp., 6 NY2d 426, 434; Penthouse Props. v 1158 Fifth Ave., 256 App Div 685, 691). It would be awkward, if not untenable, for the relationship of the tenant to be governed by a proprietary lease and the cooperative regulations with respect to the major portion of his tenancy (apartment 4G) and by a rent-stabilized lease and the rent regulatory statutes with respect to the minor portion of the tenancy (apartment 2B, the "maid's room"). Thus, the question ultimately presented by this case is whether or not a tenant can have the dual status of cooperator and rent-stabilized tenant.

Respondent Bolan's characterization of the maid's unit (apartment 2B) contradicts any description of the space contained in the certificate of occupancy or in the offering statement. The certificate of occupancy describes the second floor as "Maids' rooms, tenant storage and mechanical equipment rooms." The "Offering Plan" for the premises states, "There are seven maid's rooms on the second floor of the Building, all of which are presently occupied on a month-to-month basis." Significantly, the Martin Act (General Business Law, art 23-A) requires a plan for cooperative conversion, as detailed in the offering statement, to be furnished to each affected tenant (General Business Law § 352-eeee [2] [f] [formerly § 352-eeee (3) (b), as amended by L 1980, ch 754, § 2]) and provides for a period of review during which the Attorney-General may require "deficiencies" to be corrected (General Business Law § 352-e [2]). The statute requires the statement to include "a description of the property, the nature of the interest, and

how title thereto is to be held" (General Business Law § 352-e [1] [b]) and pronounces that it "shall not omit any material fact or contain any untrue statement of a material fact" *(id.).* The statute expressly provides that the Attorney-General may refuse to approve the plan if the statement "does not clearly set forth the specific property or properties to be purchased, leased, mortgaged, or otherwise to be acquired, financed or the subject of specific investment with a substantial portion of the offering proceeds" (General Business Law § 352-e [2]).

■ On this appeal, respondent Bolan concedes that the offering plan did not allocate any shares to the maid's unit nor offer it for sale. However, despite his contention that the unit comprises part of his residence, there is no indication that either Bolan or any other tenant complained to the Attorney-General's office that the sponsor's "Offering Plan" was inaccurate. Having failed to raise a timely objection to the terms of the offering statement, Bolan should not now be heard to complain that the plan of cooperative conversion failed to reflect the full extent of his interest in the premises.

■ Moreover, as a shareowner and proprietary lessee of the cooperative corporation, Bolan does not come within the ambit of the Rent Stabilization Law and the regulatory protection which it affords. As petitioner points out in its brief, section 2520.11 *(l)* of the Rent Stabilization Code (9 NYCRR) exempts from its application "housing accommodations contained in buildings owned as cooperatives or condominiums on or before June 30, 1974; or thereafter, as provided in section 352-eeee of the General Business Law in accordance with section 2522.5 (h) of this Title [Leases for housing accommodations in cooperative- or condominium-owned buildings]". Section 2522.5 (h) (5) exempts leases entered into after a plan of cooperative conversion has been declared effective and title to the property has been transferred to the cooperative corporation.

On appeal, petitioner and respondents all cite *Cohen v Brown, Harris, Stevens* (64 NY2d 728) in support of their respective positions, petitioner arguing that it is analogous to and respondents that it is distinguishable from the case at bar. In *Cohen (supra),* the Court of Appeals remarked that the existence of "any landlord-tenant relationship between the parties is clearly incidental to plaintiffs' status as shareholders in the cooperative apartment corporation" (64 NY2d, at 731).

General Business Law § 352-eeee, in the course of various

amendments, has never extended the protection of the rent regulatory statutes to the owners of shares in a cooperative corporation. Prior to the 1980 amendment (L 1980, ch 754, § 2), the law provided that, under an eviction plan of cooperative conversion, "eligible senior citizens who reside in dwelling units subject to government regulation as to rentals and continued occupancy shall continue to be subject thereto" (General Business Law former § 352-eeee [2] [b] [as added by L 1979, ch 432, § 2]). In 1980, this provision was amended to include "eligible handicapped persons". To be considered "eligible" pursuant to the provision, senior citizens and handicapped persons are required, by definition, to be "non-purchasing tenants" (General Business Law § 352-eeee [1] [e], [f]). In 1982, the law was broadened to permit the sponsoring of noneviction plans for cooperative conversion within the City of New York (L 1982, ch 555, § 2), and the provision subjecting dwelling units to continued governmental regulation was expanded to include "non-purchasing tenants" in general (General Business Law § 352-eeee [2] [c] [iii]). Under all versions of the statute, "non-purchasing tenant" is defined as: "A person who has not purchased under the plan and who is a tenant entitled to possession at the time the plan is declared effective or a person to whom a dwelling unit is rented subsequent to the effective date. A person who sublets a dwelling unit from a purchaser under the plan shall not be deemed a non-purchasing tenant." (General Business Law § 352-eeee [1] [e].)

The date the cooperative conversion plan was declared effective is not contained in the record. Respondent Bolan's brief states, "At the time the Building was converted to a Coop in 1981, Bolan was a rent-stabilized tenant and occupant of both of the apartments pursuant to a rent-stabilized lease for each apartment". The petition recites that the cooperative corporation acquired title to the premises at a closing held on or about May 1, 1981, but does not disclose the date the plan was declared effective. In any event, the date is not material because, as a purchaser of shares in the cooperative corporation, Bolan does not come within the definition of "non-purchasing tenant". Even if Bolan entered into a lease for the maid's room (apartment 2B) after the plan became effective, as an existing lessee on the date the plan was declared effective, he does not qualify as "a person to whom a dwelling unit is rented subsequent to the effective date" (General Business Law § 352-eeee [1] [e]), and he is not protected by the rent

regulatory statutes. Finally, it has not been established that the maid's room, lacking any kitchen facilities, qualifies as a "dwelling unit" within the meaning of this provision.

The statutory scheme contemplates that "purchaser under the plan" and "non-purchasing tenant" (respectively defined in the present statute in General Business Law § 352-eeee [1] [d], [e]) are mutually exclusive categories. As the Court of Appeals noted in *Cohen v Brown, Harris, Stevens (supra,* at 731), "The rent control law was enacted to protect tenants from overreaching and abusive landlords and it simply is not adaptable to situations such as this where the same party is both a 'tenant' and a shareholder in the landlord corporation".

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Eugene L. Nardelli, J.), entered August 26, 1991, should be reversed, on the law, and the petition granted, without costs, and the determination of respondent DHCR annulled, and judgment entered declaring that petitioner is not required to renew respondent Bolan's lease to apartment 2B.

ELLERIN, J. P., WALLACH, ROSS and KASSAL, JJ., concur.

Order and judgment (one paper) of the Supreme Court, New York County, entered August 26, 1991, is reversed, on the law, and the petition granted, without costs, and the determination of respondent DHCR annulled, and judgment entered declaring that petitioner is not required to renew respondent Bolan's lease to apartment 2B.