OPINION OF THE COURT
Peter M. Wendt, J.
*528 Petitioner commenced this summary holdover proceeding in March 1999 to recover possession of the subject premises, 1845 First Avenue, apartment 5S, New York, New York. Petitioner elected not to renew respondent’s lease as a result of respondent’s alleged failure to occupy the subject apartment as his primary residence. Petitioner alleges that respondent maintains his primary residence at another unit, 5N, in the same building and on the same floor. Respondent argues that petitioner and its predecessors have acquiesced to his use of both apartments 5N and 5S as one combined primary residence. The issue before this court is whether or not respondent uses apartment 5S as an integral part of his primary residence. This court conducted a trial.
At the trial, petitioner’s first witness was Jerry Edelman, the managing agent of the subject building. He testified that he has been the managing agent since 1995, when 95 & 1st Realty L. L. C. became the owners. He continued as the managing agent when petitioner acquired the building in 1998. Mr. Edelman testified that he viewed both 5N and 5S on multiple occasions, and that respondent used 5S, which lacked a kitchen and a bathroom, as an artist’s studio to paint and store his art supplies and paintings. Mr. Edelman also testified that 5N was respondent’s primary residence, as it contained a living room, sitting room, bedroom, kitchen and a bathroom.
The testimony elicited from Mr. Edelman was not credible. At trial, Mr. Edelman testified that he has been at the premises more than a dozen times. In Mr. Edelman’s pretrial deposition, however, he stated that he had been to respondent’s residence on at least one occasion and perhaps a second. When questioned about this direct conflict, Mr. Edelman did not adequately explain the conflict between his testimony and the sworn statement in his deposition. Mr. Edelman did, however, recall signing his deposition transcript and swearing to its truth. Moreover, Mr. Edelman’s testimony, at best, indicates that he does not know how respondent uses apartment 5S on a daily basis. Specifically, Mr. Edelman testified that during his brief visits to the apartment, he did not discuss with respondent how the apartments were utilized.
Petitioner’s second witness was Raymond Byrne, a senior customer service representative from Consolidated Edison and a qualified expert. Mr. Byrne testified that from 1996 to present the average monthly electrical usage in 5S was approximately 11 to 40 kilowatt hours, except for the summer months when the average was approximately 124 kilowatt *529 hours. He also testified that the average electrical usage during the same period in 5N was approximately 61 to 121 kilowatt hours. Petitioner asserts that such a low consumption of energy by respondent in 5S is indicative that respondent does not use the apartment as his primary residence.
Respondent, however, credibly explains the low electrical usage in 5S. He testified that he paints using the natural light that pours into 5S and does not use electric light when he paints. Respondent acknowledges using a single light bulb in each of the rear rooms in 5S to illuminate the area throughout the day until he retires for the night. This testimony is consistent with Mr. Byrne’s testimony that a 100-watt light bulb burning 8 hours a day for 31 days would use 25 kilowatt hours of electricity. Respondent also testified that some of the electrical usage attributed to the 5S bill is as a result of running an electrical cord into 5N to power some of his appliances, including an air conditioner.
On the other hand, respondent credibly testified to the facts surrounding his long-term tenancy at the subject apartment. Respondent is a painter of abstract art. Since 1968, with the exception of one five-month period, he has lived and painted in contiguous apartments 5N and 5S at 1845 First Avenue. Respondent first moved into apartment 5N in 1961. He lived in there with Sophronus Mundy. In 1968, when Mr. Mundy became the lessee of apartment 5S, respondent and Mr. Mundy enlarged their home to include both apartment 5S and 5N. Respondent and Mr. Mundy openly shared the two apartments from 1968 to 1983. Specifically, he testified that they used the kitchen area of 5S as their bedroom after the stove was removed from the apartment, as was the corresponding gas meter in the basement. Moreover, respondent testified that the original landlord, Mr. Yezer, had knowledge of this living arrangement.
When Mr. Mundy moved out in 1983, Mr. Yezer offered respondent a lease for 5S so that he could continue living in both apartments. Respondent testified that for financial reasons, he did not accept the offer and vacated apartment 5S. Five months later, respondent accepted Mr. Yezer’s offer of a lease for apartment 5S and became the first rent-stabilized tenant of 5S. Respondent testified that he signed a lease for 5S in March 1984. In consideration for Mr. Yezer’s offering respondent this arrangement, respondent agreed that Mr. Yezer would not have to bring apartment 5S up to building code standards. Thus, there was ample consideration for Mr. Yezer’s waiver. The *530 respondent’s credible testimony proved that the original landlord invited this arrangement, approved of it for many years and that subsequent landlords also approved of this arrangement. The building was sold to petitioner’s predecessor, which also approved the arrangement while it owned the building. Petitioner then continued to accept this arrangement until it sent the notice of nonrenewal which served as the predicate for this proceeding.
Respondent credibly testified that after moving back into 5S, he resumed using both apartments as a combined living and working space as he did when he was sharing the apartments with Mr. Mundy, with some small changes. He testified that his bed is now kept in 5N and his dresser, his shoes and all his clothes are kept in 5S as an extension of his bedroom, as there are no closets in 5N. Respondent resumed painting in the front area of apartment 5S. Since 1984, respondent’s continued use of both apartments has remained virtually unchanged. Respondent also testified extensively about his daily routine that involved passing between both apartments during the course of the day. Upon waking, respondent walks from his bedroom in 5N across the hall to 5S to exercise and change his clothes. When respondent returns from going out, he removes his outer clothing and puts them in 5S. Respondent keeps all his clothes in 5S, not 5N.
It is well settled that in a nonprimary residence matter, the petitioner has the burden of proof to show that the respondent maintains his primary residence at a location other than the subject premises. (Sharp v Melendez, 139 AD2d 262 [1st Dept 1988], lv denied 73 NY2d 707 [1989].) Based on the evidence presented to this court, particularly the relative credibility of the witnesses, petitioner has failed to prove that respondent does not maintain his primary residence at the subject premises. Rather, respondent has shown that he maintains his primary residence at 1845 First Avenue in the combined living and working space known as apartments 5S and 5N.
In determining whether or not two nonadjacent apartments will constitute a single residential unit, the courts have looked to several important factors. First, the courts look to the tenant’s intent, which is manifested in the tenant’s use of the apartments. (Sharp v Melendez, 139 AD2d 262, supra; Page Assocs. v Dolan, NYLJ, Nov. 8, 1984, at 4, col 2 [App Term, 1st Dept]; Tracy Assocs. v Faust, NYLJ, Apr. 15, 1987, at 14, col 2 [Civ Ct, NY County].) Another relevant factor in this determination is the landlord’s knowledge of, and acquiescence in, the *531 arrangement. (Sharp v Melendez, supra.) Moreover, the Courts in deciding these cases have recognized that “ ‘the transferee of real property takes the premises subject to the conditions as to tenancy, including any waiver of rights, that his predecessor has established if the transferee has notice of the existence of the leasehold.’ (52 Riverside Realty Co. v Ebenhart, 119 AD2d 452, 453; Radcliffe Assocs. v Greenstein, 274 App Div 277 * * *.)” (Sharp v Melendez, 139 AD2d 262, 266, supra.)
In Sharp v Melendez (supra), the Appellate Division, First Department, found that the landlord failed to prove that the tenant maintained his primary residence at a location other than the subject premises. The Court also found ample evidence that the landlord was fully aware of tenant’s living arrangement and participated in tenant’s expansion of his limited residential space. (Supra.) In the instant proceeding, as in Sharp v Melendez, neither apartment alone constitutes one complete primary residence. Rather, both apartments together constitute one primary residence.
At the trial herein, ample evidence was adduced showing that respondent’s use of both apartments as his primary residence has essentially remained the same for over 30 years, notwithstanding the five-month period that respondent was out of possession of apartment 5S in 1983. If we start with respondent’s re-occupancy of 5S in 1983, his uninterrupted use of apartments 5N and 5S as one combined primary residence, with successive landlords’ actual knowledge and acquiescence, has continued uninterrupted for 17 years. Respondent has used 5S as part of his home. The fact that respondent also works there does not keep both apartments from being one contiguous primary residence. Respondent has kept all his clothes and shoes in 5S since 1983. Moreover, there is uncontroverted evidence that in 1983 a prior landlord, Mr. Yezer, actively solicited respondent to lease apartment 5S so that he could continue to utilize both apartments as he had occupied the same space with Mr. Mundy.
Respondent also testified that his ability to use both apartments to create a unique home garnered acclaim from the editors of the home design magazine, House and Garden, when an article on 5N and 5S was published in November 1983. Respondent testified that he gave a copy of this article to each landlord, including Mr. Edelman, to inform them “of who he is and what he was doing in his home.” Moreover, respondent also testified that in 1995, prior to Mr. Shapolsky’s conveyance to 95 & 1st Realty L. L. C., Mr. Edelman and a group of men *532 walked through both 5N and 5S. Respondent also permitted Mr. Edelman access to both apartments and allowed him to take unlimited photographs of both units. It is apparent that every landlord since respondent’s original landlord has known that respondent used both apartments as one combined unit.
As in Tracy Assocs. v Faust (supra), this court must consider “the intent and understanding of the parties as the relationship of landlord and tenant has developed and progressed over the years.” (NYLJ, Apr. 15, 1987, at 14, col 2 [Civ Ct, NY County].) The court therein found that the second unit was rented with the “express intent of it being used as an expansion of the primary residence, as if they were in fact one unit.” (Supra, at 14, col 2.) Here, Mr. Yezer, the original landlord, invited respondent to continue living in the subject apartment as part of his primary residence by offering him a lease for 5S in 1983.
In Page Assocs. v Dolan (supra), the Appellate Term, First Department, found that the tenant treated and utilized the two noncontiguous units as a de facto single residential unit. (NYLJ, Nov. 8, 1984, at 4, col 2 [App Term, 1st Dept].) The tenant moved into the first apartment with her nephew in 1963. In 1968, she rented another small apartment across the hall, so that her nephew could have his own bedroom. The court found that the second apartment, “while not contiguous, had been treated and utilized by the tenant as a de facto single residential unit for many years with the acquiescence of the prior owner. In essence, tenant’s primary residence is that combined unit.” (Supra, at 4, col 2.) In the case at bar, the situation is remarkably similar, except that in the instant proceeding the combined units are contiguous.
Petitioner is incorrect regarding the interpretation of respondent’s tax deduction for the entire rent of apartment 5S and the utilities as proving that the respondent does not live in 5S. Rather, the tax deductions may be more indicative of respondent’s possible over-deduction rather than determinative of whether or not he really uses the apartment as part of his primary residence. The facts herein indicate that respondent uses apartment 5S as an essential part of his primary residence. This use of both apartments, each as a partial and incomplete residence but both as an entire residence, has continued with his successive landlords’ knowledge and acquiescence, for at least 17, if not 30, years. Thus, this case falls directly withing the rule of Sharp v Melendez (supra).
Respondent argues waiver to petitioner’s allegation that he does not maintain his primary residence at the subject apart *533 ment 5S. Although waiver may not be a defense regarding the issue of exemption from initial coverage by rent regulation (see, e.g., Trustees of Columbia Univ. v Sperling, 44 AD2d 819 [1st Dept 1974]), a landlord’s continuing acquiescence in a tenant’s using two apartments in one building as a combined primary residence is often crucial. (See, Sharp v Melendez, supra.) The issue of nonprimary residence is not usually subject to waiver or estoppel. However, a landlord’s continued acquiescence to tenant’s use of two (here, contiguous) apartments in one building as a combined residence does estop successor landlords from choosing one of the two apartments, incomplete as a residence in itself, and claiming that such unit is therefore not tenant’s primary residence.
Respondent also raises the missing witness issue against petitioner. When a party fails to appear as a witness in a proceeding, the court may draw the strongest inference against him that the opposing evidence in the record permits. (Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137 [1983]; Noce v Kaufman, 2 NY2d 347 [1957].) The usual inference drawn is that the testimony of the party would be unfavorable to his or her position. This negative inference also arises when a party fails to call a witness within its control who could be expected to have knowledge about a material issue in the case and provide noncumulative testimony. (People v Macana, 84 NY2d 173 [1994].) In order to rebut this negative inference, the party against whom the missing witness argument is made must account for the absence of the witness or otherwise demonstrate that the application of the rule is inappropriate. (Matter of Ismael S., 213 AD2d 169 [App Div, 1st Dept 1995].)
In the instant proceeding, respondent raises the missing witness issue against petitioner as a result of the failure of the current owner, Joseph Tahl, and the onsite superintendent, Frank Evangelista, to appear and testify. Mr. Evangelista is the current building superintendent and has been the superintendent since the 1960’s, with the exception of approximately one year when Mr. Shapolsky owned it. Mr. Evangelista lives onsite and has daily firsthand knowledge of respondent’s use of both apartments. Petitioner did not call Mr. Evangelista to rebut respondent’s testimony about how the two apartments were used as one continuous primary residence. The permissible inference here is that Mr. Evangelista could not rebut respondent’s testimony had he been called, and that his testimony would not have been favorable to petitioner’s case. Moreover, petitioner has offered no explanation as to the *534 absence of Mr. Evangelista, nor has it demonstrated that the missing witness rule is inappropriate under the circumstances herein. No inference is drawn from Mr. Tahl’s failure to testify, as he may not have personal knowledge of the facts.
Based upon the foregoing, the credible evidence shows, and this court finds, that apartment 5S has been an essential part of respondent’s primary residence in both apartments 5N and 5S together. Accordingly, the instant proceeding is dismissed with prejudice.