■ North Shore Towers Apartments Incorporated, Respondent-Appellant, v Three Towers Associates, Appellant-Respondent. [60 NYS3d 240]—

Appeal and cross appeal from an order of the Supreme Court, Queens County (Augustus C. Agate, J.), entered September 18, 2014. The order, insofar as appealed from, granted that branch of the plaintiff's motion which was for summary judgment on the first cause of action to the extent of making a declaration in the plaintiff's favor. The order, insofar as cross-appealed from, denied those branches of the plaintiff's motion which were for summary judgment on the second, third, fourth, and fifth causes of action.

Ordered that the order is reversed insofar as appealed from, on the law, and that branch of the plaintiff's motion which was for summary judgment on the first cause of action is denied; and it is further,

Ordered that the order is affirmed insofar as cross-appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant.

The plaintiff, a New York housing cooperative corporation (hereinafter the cooperative), owns three buildings in Floral Park consisting of 1,844 apartments and 2,492 parking spaces. The defendant (hereinafter the sponsor) was the sponsor of an offering plan, which was declared effective in 1986, to convert the buildings from rental property into cooperative ownership. The sponsor was the holder of unsold shares representing the apartments and parking spaces that were not purchased by tenants during the conversion to cooperative ownership. On March 29, 2010, the sponsor sent a letter to the cooperative purporting to surrender cooperative shares representing 158 unsold parking spaces.

The cooperative commenced this action against the sponsor, asserting that the sponsor's purported surrender of the shares representing unsold parking spaces was in violation of, among other things, the offering plan and the proprietary leases that allegedly governed the rights and responsibilities of the cooperative and its shareholders. In an amended complaint, the cooperative asserted five causes of action, seeking a judgment declaring that "the purported surrender of the parking spaces without surrendering the Proprietary Leases for the same number of apartments is null and void" (the first cause of action), a mandatory injunction requiring the sponsor "to submit individual Proprietary Leases for shares of each individual

apartment and the shares of stock for parking spaces be placed proportionately on all Proprietary Leases" (the second cause of action), an award of unpaid maintenance charges (the third cause of action), an order directing the sponsor to pay maintenance for the unsold parking spaces pendente lite (the fourth cause of action), and an award of an attorney's fee and costs (the fifth cause of action). Both parties subsequently moved for summary judgment.

In an order entered September 18, 2014, the Supreme Court granted that branch of the cooperative's motion which was for summary judgment on the first cause of action, to the extent of declaring that the cooperative "is not required to accept [the sponsor's] surrender of solely unsold shares to parking spaces and that [the sponsor] is not entitled to cancel the proprietary lease and only surrender the unsold shares to parking spaces." In addition, the court, among other things, denied those branches of the cooperative's motion which were for summary judgment on the second, third, fourth, and fifth causes of action. The sponsor appeals, and the cooperative cross-appeals.

"The relationship between the shareholder/lessee of a cooperative corporation and the corporation is determined by applying the usual rules of contract interpretation to the controlling documents, including the proprietary lease" (*Consolidated Resources, LLC v 210-220-230 Owner's Corp.*, 59 AD3d 579, 581 [2009]; *see Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 59 [2005]; *Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556, 563 [1985]).

Paragraph 38 (h) (ii) of the sample proprietary lease accompanying the offering plan provides that "a holder of Unsold Shares shall be entitled to cancel this lease if . . . the Unsold Shares constitute 15% or less of the Lessor's outstanding shares, at least five (5) years have elapsed since the Closing Date and on the effective date of cancellation the holders of Unsold Shares pay to the Lessor a sum equal to 24 times the sum of the then current monthly maintenance charges for the apartments and parking spaces being surrendered." Section Q of the offering plan, entitled "Unsold Shares," similarly provides that "[t]he holders of Unsold Shares may cancel the appurtenant Proprietary Leases only if . . . the Unsold Shares constitute 15% or less of the outstanding shares, at least five years have elapsed since the Closing Date and, on the effective date of cancellation, the holders of Unsold Shares pay to the Apartment Corporation a sum equal to 24 times the sum of the then current monthly maintenance charges for the apartments and parking space(s), if applicable, being surrendered." That

section further provides that "[o]n the Closing Date, the Sponsor or other shareholders, as tenant, will execute Proprietary Leases for the apartments and parking space(s), if applicable, to which such Unsold Shares are allocated."

As a threshold matter, it is undisputed that no executed proprietary lease exists for the subject unsold parking spaces. Nevertheless, up until March 2010, the sponsor was paying the maintenance charges for those parking spaces and those payments were accepted by the cooperative, despite the absence of an appurtenant proprietary lease. Moreover, the parties acknowledge that their respective rights and responsibilities are governed, in part, by the terms of the proprietary lease accompanying the offering plan.

Contrary to the Supreme Court's determination, an ambiguity exists as to whether the controlling documents permitted the sponsor to surrender only the unsold shares representing the subject parking spaces. The aforementioned provisions reasonably could be interpreted to mean that the sponsor can cancel a proprietary lease appurtenant to unsold shares for parking spaces provided that it, among other things, pays the cooperative 24 months of maintenance for those parking spaces. The words "and" and "if applicable" do not unambiguously mean, as the cooperative suggests, that shares appurtenant to a parking space can only be surrendered in conjunction with the surrender of shares appurtenant to an apartment. These ambiguities preclude an award of summary judgment (*see generally Icdia Corp. v Visaggi*, 135 AD3d 820, 823 [2016]; *Bana Elec. Corp. v Bethpage Union Free School Dist.*, 76 AD3d 987, 988 [2010]).

Moreover, the Supreme Court erred in determining, as a matter of law, that the cooperative did not "acquiesce[ ] in or acknowledge[ ] [the sponsor's] claimed right to a wholesale surrender of unsold shares to parking spaces" when it accepted the sponsor's surrender of shares for unsold parking spaces on four prior occasions (*see Board of Mgrs. of Stewart Place Condominium v Bragato*, 15 AD3d 601, 602 [2005]).

Accordingly, the Supreme Court erred in granting that branch of the cooperative's motion which was for summary judgment on the first cause of action to the extent of declaring that the cooperative "is not required to accept [the sponsor's] surrender of solely unsold shares to parking spaces and that [the sponsor] is not entitled to cancel the proprietary lease and only surrender the unsold shares to parking spaces."

The cooperative's remaining contentions on its cross appeal have been rendered academic in light of our determination or

are without merit. Rivera, J.P., Chambers, Roman and LaSalle, JJ., concur.