**Matter of 320 W. 87, LLC v 320 W. 87th St., Inc.**

2024 NY Slip Op 32634(U)

July 30, 2024

Supreme Court, New York County

Docket Number: Index No. 654793/2023

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. JOHN J. KELLEY                    PART                        56M

                                    *Justice*

-------------------------------------------------------------------------------X

In the Matter of

320 WEST 87, LLC,

                                    Petitioner,

                        - v -

320 WEST 87TH STREET, INC.,

                                    Respondent.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 654793/2023 |
| MOTION DATE | 07/12/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION, ORDER +
JUDGMENT ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32

were read on this motion to/for                     ARTICLE 78 (BODY OR OFFICER)                     .

In this proceeding pursuant to CPLR article 78, the petitioner seeks a judgment (1) declaring that it is a holder of unsold shares of the respondent residential cooperative corporation, 320 West 87th Street, Inc. (hereinafter the respondent or the Apartment Corporation), (2) declaring that the respondent acted beyond its authority in imposing certain obligations on the petitioner that are not applicable to it by virtue of its status as a holder of unsold shares, (3) permanently enjoining the respondent from imposing any requirements or conditions upon it from which it is exempt by virtue of its status as a holder of unsold shares, and (4) awarding it damages resulting from the Apartment Corporation's conduct, including carrying costs, lost profits, attorney's fees, litigation costs, and interest. The Apartment Corporation opposes the petition. The proceeding is converted into an action for a judgment declaring that the petitioner is a holder of unsold shares and, thus, not subject to those requirements and conditions that are properly imposed only upon tenant-shareholders of the Apartment Corporation. The petition thereupon is deemed to constitute a complaint, the initiatory order to show cause, petition, and supporting papers are deemed to constitute a

**654793/2023   320 WEST 87 LLC vs. 320 WEST 87TH STREET, INC.**
**Motion No.  001**

Page 1 of 13

[* 1]

motion for summary judgment on the complaint, and the answer and other opposing papers are deemed to constitute an answer to the complaint, opposition to the motion, and a cross motion for summary judgment declaring that the petitioner is not a holder of unsold shares and is subject to conditions and requirements applicable to tenant-shareholders. The petitioner's motion is thereupon granted, and it is adjudged and declared that the petitioner is a holder of unsold shares exempt from certain rules and restrictions, as further described herein, and the motion is otherwise denied. The respondent's cross motion is denied.

In the first instance, although the petitioner commenced this matter as a special proceeding pursuant to CPLR articles 4 and 78, declaratory relief is not available as a remedy in a CPLR article 78 proceeding (*see Matter of Cuffy v Pesce*, 178 AD3d 695, 695 [2d Dept 2019]; *Matter of Krichevsky v Dear*, 172 AD3d 1370, 1370 [2d Dept 2019]; CPLR 3017). Moreover, "'a CPLR article 78 proceeding is not the proper vehicle to resolve contractual rights'" (*Matter of Williams v Town of Carmel*, 175 AD3d 550, 550-551 [2d Dept 2019], quoting *Matter of Hertz v Rozzi*, 148 AD2d 535, 536 [1989], *affd* 74 NY2d 702 [2d Dept 1989]). Rather, an action for a declaratory judgment is the proper vehicle for determining rights and obligations under a contract (*see Kalisch-Jarcho, Inc. v City of New York,* 72 NY2d 727, 731 [1988]; *Matter of Williams v Town of Carmel*, 175 AD3d at 551). Since the relationship between a shareholder of a cooperative corporation and the corporation itself is determined by applying the usual rules of contract interpretation to the controlling documents, including the offering plan, proprietary lease, and by-laws (*see North Shore Towers Apt., Inc. v Three Towers Assocs*., 153 AD3d 632, 633 [2d Dept 2017]), a declaratory judgment action is the proper vehicle for determining the contractual rights and obligations created a condominium's or residential cooperative corporation's operating documents and by-laws (*see Big Four, LLC v Bond St. Loft Condominium*, 94 AD3d 401, 402-403 [1st Dept 2012])

CPLR 103(c), however, provides that, "[i]f a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the

proper form, but the court shall make whatever order is required for its proper prosecution."

Hence, in the interest of justice, the court may convert a special proceeding into an action, upon such terms as may be just (*see id.*). The court does so here, converts the proceeding into an action, and considers the parties' submissions as constituting cross motions for summary judgment (*see Matter of Houston v Board of Mgrs. Deer Run Condominium Assn.*, 162 AD3d 1026, 1027 [2d Dept 2018]; *Matter of 10 W. 66th St. Corp. v New York State Div. of Housing & Community Renewal*, 184 AD2d 143, 148-149 [1st Dept 1992]).

CPLR 3001 provides, in relevant part, that,

> "[t]he supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds."

"In an action for a declaratory judgment, the demand for relief in the complaint shall specify the rights and other legal relations on which a declaration is requested and state whether further or consequential relief is or could be claimed and the nature and extent of any such relief which is claimed" (CPLR 3017[b]). The petitioner has satisfied the pleading requirements in this matter.

In 1984, two New York partnerships, 320 West 87th Street Associates and 320 West 87th Street Company (together the sponsors), jointly owned the subject apartment building at 320 West 87th Street in Manhattan. At that time, the sponsors offered shares in the Apartment Corporation to the existing tenants and/or the public, in accordance with a cooperative conversion offering plan duly filed with the New York State Attorney General's Office. Along with the offering plan, the sponsors filed a proposed proprietary lease, which was to be entered into between the Apartment Corporation and any potential tenant-shareholders, and the Apartment Corporation's proposed by-laws (collectively the cooperative documents).

With respect to shares that remained unsold as of the closing date of the sale of the building from the sponsors to the Apartment Corporation, the offering plan provided that,

> "[i]f by the Closing Date all of the shares allocated to all apartments have not been sold and fully paid for, the Sponsor will produce on the Closing Date a

**654793/2023   320 WEST 87 LLC vs. 320 WEST 87TH STREET, INC.**                    **Page 3 of 13**
**Motion No.  001**

> financially responsible individual person or persons, resident in the State of New York, acting for his own account only (herein referred to as 'Holder of Unsold Shares') to whom all of the unsold shares will be issued and who will enter into proprietary leases for the apartments to which such shares are allocated. The Sponsor may hold such shares and enter into proprietary leases for its own account as a 'Holder of Unsold Shares' (in which case the Sponsor would be a 'Holder of Unsold Shares')."

Both the proprietary lease and the by-laws adopted the offering plan's definition of a holder of unsold shares. The offering plan also provided that,

> "[p]ursuant to Section 216 of the United States Internal Revenue Code, the Sponsor as Holder of Unsold Shares would qualify for a period not to exceed three years as a 'Qualified Tenant Shareholder'. *If, three years after the closing,* the Sponsor holds Unsold Shares in an amount so that *more than 20% of the income of the Apartment Corporation may not come from 'Qualified Tenant Shareholders' the Sponsor will transfer* to one or more individual holders, each purchasing for his own account, an amount of Unsold Shares so that income to the Apartment Corporation from all sources other than Qualified Tenant Shareholders will be less than 20% of the Apartment Corporation's income."

(emphasis added).

Pursuant to the cooperative documents, a holder of unsold shares was to be exempt from certain rules and restrictions applicable to other shareholders, particularly tenant-shareholders, such as requirements that tenant-shareholders (a) contribute to the working capital fund for services to be performed within the cooperative, (b) obtain consent from the Apartment Corporation's board of directors, or from a majority vote of shareholders, prior to selling shares, assigning a lease, or subletting an apartment, (c) pay a transfer fee or "flip-tax" upon a sale, assignment, or sublease, and (d) obtain the written consent of the Apartment Corporation prior to making alterations to an apartment. Finally, the offering plan provided that a shareholder's status as a holder of unsold shares would be terminated when the holder of unsold shares or its successor in interest became an occupant of an apartment previously covered by a propriety lease that had been given to that holder of unsold shares.

On January 18, 1985, the closing date for the sale of the building from the sponsors to the Apartment Corporation, the sponsors elected to become holders of unsold shares, acquiring 7,297 shares, constituting nearly 79.3% of the issued shares, that were allocated to 29

apartments. Thereafter, the Tax Reform Act of 1986, PL 99-514, Internal Revenue Code (IRC) § 216, was enacted, and the definition of a "tenant-shareholder" was changed from "individual" to "person," thus permitting entities to qualify as tenant-shareholders. By 1988, three years after the closing, the sponsors remained holders of many unsold shares, but had yet to make an mandatory transfer of its unsold shares pursuant to the offering plan, since, by that time, more than 80% of the Apartment Corporation's income was generated from qualified tenant-shareholders, and the sponsors no longer were obligated to transfer any of their remaining shares. On September 30, 2021, the petitioner purchased all of the remaining unsold shares that were then still owned by the sponsors, which consisted of shares allocated to nine apartment units---1CE, 22, 4W, 4W1, 6W2, 7W, 7W1, 8W2, and 9E. In connection with the purchase, the petitioner was designated in writing by the sponsors as a successor holder of unsold shares. At the closing of the sale of these shares from the sponsors to the petitioner, the Apartment Corporation issued shares to the petitioner, and entered into propriety leases with the petitioner with respect to those units. The petitioner also selected individuals to fill two seats on the Apartment Corporation's board of directors that previously had been held by the sponsors. Finally, the petitioner registered as a broker-dealer with the New York State Department of Law.

In February 2022, the petitioner renovated apartment unit 4W, without obtaining formal board approval or paying an alteration fee. On April 1, 2022, the petitioner sublet apartment unit 4W1, without obtaining board approval or paying a sublet fee, and subsequently renewed that sublease the following year. In May 2023, the petitioner began plans to renovate apartment unit 22, and informed the board, as it had done with the previous renovation. On May 31, 2023, the Apartment Corporation informed the petitioner that it was not a holder of unsold shares, since it was an entity and not an individual person. The Apartment Corporation further contended that the petitioner was required to pay a flip tax, obtain board approval for every renewal of each sublease, and follow all rules applicable to tenant-shareholders regarding alterations. On July

[* 5]

21, 2023, the Apartment Corporation's property manager sent the petitioner a letter and invoice, informing the petitioner that it was charging the petitioner sublet fees associated with apartment unit 4W1, retroactively to March 17, 2022, and would continue to do so until the end of the second year of the permissible sublease. On September 28, 2023, the petitioner commenced this proceeding by way of order to show cause and verified petition. The respondent answered the petition, denying, among other things, that the petitioner had any right to the relief sought.

In its petition, the petitioner asserted that the Apartment Corporation had repeatedly recognized it as a holder of unsold shares, both orally and in writing, and that any assertion to the contrary contravened the terms of the cooperative documents. The petitioner further asserted that the Apartment Corporation's decision to impose restrictions regarding alterations, and retroactively to charge fees, was in excess of its authority under the cooperative documents, as well as being arbitrary and capricious and an abuse of discretion. In support of the petition, the petitioner submitted excerpts of the cooperative documents, the offering plan amendments, and the designation by the sponsors that the petitioner, as purchaser of the sponsors' shares, was a holder of unsold shares, along with the relevant certificates and signature pages, the Apartment Corporation's 2020 and 2021 financial statements, various board meeting notices and minutes, and the May and July 2023 letters from the Apartment Corporation.

In opposition, the Apartment Corporation asserted that, pursuant to the terms of the cooperative documents, the petitioner could not be characterized as a holder of unsold shares, since it was an entity rather than an individual, and that the sponsors' designation of the petitioner as a holder of unsold shares was irrelevant. They further asserted that the 1986 amendment to the IRC that expanded the definition of a tenant-shareholder to include entities was irrelevant and not applicable in this instance, since the sponsors did not subsequently amend the offering plan to reflect the IRC's new definition. Additionally, the Apartment Corporation asserted that, even if it had acknowledged the petitioner as a holder of unsold

[* 6]

shares at any point, that conduct did not constitute a waiver that prevented the Apartment Corporation from enforcing the proprietary lease and imposing obligations and restrictions applicable to other shareholders, since the lease contained an applicable non-waiver provision. In support of its position, the Apartment Corporation referenced the offering plan, the proprietary lease, and the sponsors' designation of purchaser as a holder of unsold shares.

Upon converting the proceeding into an action and the petition into a complaint, and treating the petitioner's request for relief as a motion for summary judgment on the complaint for declaratory relief, the court notes that it is well settled that the movant on a summary judgment motion "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr*., 64 NY2d 851, 853 [1985] [citations omitted]).  The motion must be supported by evidence in admissible form (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]), as well as the pleadings and other proof such as affidavits, depositions, and written admissions (*see* CPLR 3212).  The facts must be viewed in the light most favorable to the non-moving party (*see Vega v Restani Constr. Corp*., 18 NY3d 499, 503 [2012]).  In other words, "[i]n determining whether summary judgment is appropriate, the motion court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility" (*Garcia v J.C. Duggan, Inc*., 180 AD2d 579, 580 [1st Dept 1992]).

Once the movant meets its burden, it is incumbent upon the non-moving party to establish the existence of material issues of fact (*see Vega v Restani Constr. Corp*., 18 NY3d at 503).  A movant's failure to make a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (s*ee id*.; *Medina v Fischer Mills Condo Assn.,* 181 AD3d 448, 449 [1st Dept 2020]).  "The drastic remedy of summary judgment, which deprives a party of his [or her] day in court, should not be granted where there is any doubt as to the existence of triable issues or the issue is even 'arguable'" (*De Paris v Women's Natl. Republican Club, Inc*., 148 AD3d 401, 403-404 [1st Dept 2017]; *see Bronx-Lebanon Hosp. Ctr.*

*v Mount Eden Ctr*., 161 AD2d 480, 480 [1st Dept 1990]).  Thus, a movant does not meet its burden of affirmatively establishing entitlement to judgment as a matter of law merely by pointing to gaps in its opponent's case.  It must affirmatively demonstrate the merit of its claim or defense (se*e Koulermos v A.O. Smith Water Prods*., 137 AD3d 575, 576 [1st Dept 2016]; *Katz v United Synagogue of Conservative Judaism*, 135 AD3d 458, 462 [1st Dept 2016]).

Whether a party is a holder of unsold shares "should be determined solely by applying ordinary contract principles to interpret the terms of the documents defining their contractual relationship with the cooperative corporation" (*Kralik v 239 E. 79th St. Owners Corp.*, 5 NY3d 54, 57 [2005]).  Such documents include the relevant offering plan, amendments to the plan, and the proprietary lease (*see Yatter v Continental Owners Corp.*, 22 AD3d 573, 574 [2d Dept 2005]), as well as the certificate of incorporation and the by-laws, subject to applicable statutory and decisional law (*see Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556, 563 [1985]).  The construction of an unambiguous contract is an issue of law, to be decided by the court, as is the issue of whether the terms of the contract are ambiguous in the first instance (*see NFL Enters. LLC v Comcast Cable Communications, LLC*, 51 AD3d 52, 58[1st Dept 2008]).  The question of whether an ambiguity exists must be ascertained from the face of an agreement, without regard to extrinsic evidence (*see Warberg Opportunistic Trading Fund, L.P. v GeoResources, Inc*., 112 AD3d 78, 84 [1st Dept 2013]; *Schmidt v Magnetic Head Corp*., 97 AD2d 151, 156 [2d Dept 1983]).  The deferential business judgment rule, generally applicable to a discretionary determination made by the board of directors of a residential cooperative corporation, does not apply here, where the board allegedly "fails to act within the scope of its authority" (*Board of Mgrs. of 229 Condominium v J.P.S. Realty Co*., 308 AD2d 314, 316 [1st Dept 2003]; *see Matter of Levandusky v One Fifth Ave. Apt. Corp*., 75 NY2d 530, 540 [1990]) or allegedly "violates its own governing documents" (*Matter of Cohan v Board of Directors of 700 Shore Rd. Waters Edge, Inc.,* 108 AD3d 697, 699 [2d Dept 2013]).

[* 8]

The court concludes that the relevant contract, consisting of the cooperative documents, was unambiguous with regard to who qualified as a holder of unsold shares, and that the petitioner has established its entitlement to judgment as a matter of law by showing that the contract qualified it as a holder of unsold shares. Admittedly, the offering plan specified that shares of stock of the Apartment Corporation initially were being offered for sale to individuals over the age of 18, and not entities, and that, if by the date of closing of the sale of the building, such shares had not all been sold and fully paid for, the sponsors were to produce a financially responsible individual person or persons to whom it would issue the unsold shares, with such recipients characterized as a holders of unsold shares. Nonetheless, the offering plan also provided that the sponsors themselves "may hold such shares and enter into proprietary leases for its own account as a 'Holder of Unsold Shares' (in which case the Sponsor would be a 'Holder of Unsold Shares')." Moreover, the offering plan also provided that, pursuant to IRC § 216, the sponsors, as holders of unsold shares, would only be treated as qualified tenant-shareholders for no more than three years. If, after those three years, the sponsors still held unsold shares, thus resulting in a situation where more than 20% of the income of the Apartment Corporation came from sources other than qualified tenant-shareholders, the sponsors were required to transfer, to one or more individual shareholders, a number of unsold shares that would allow the income of the Apartment Corporation from all sources, other than qualified tenant-shareholders, to be less than 20%. As noted, within three years after the conversion, tenant-shareholders were contributing more than 80% of the Apartment Corporation's income, and the sponsors were contributing less than 20%, thus excusing the sponsors from transferring unsold shares to qualified tenant-shareholders. In any event, the offering plan did not provide that any such required transfer would negate the sponsors' status as holders of unsold shares with respect to their remaining shares. Thus, it is irrelevant to the issue of the sponsors' continued status as holders of unsold shares as to whether such events were triggered three years after the date that the sponsors sold the building to the Apartment

[* 9]

Corporation, with or without the amendment to the IRC. Moreover, there was no requirement that the sponsors amend the offering plan to reflect the 1986 definitional amendment to the IRC, since the language of the plan was unambiguous that the applicability of IRC § 216 was not limited to the version of the statute that was in effect as of 1984.

Contrary to the respondent's contention, the sponsors' designation of the petitioner as the successor holder of unsold shares, made at the time of the sale of the remaining unsold shares from the sponsors to the petitioner, and the petitioner's subsequent registration as a broker-dealer with the State of New York Department of Law, are indeed relevant to the petitioner's current status (*see RFLP, LLC v 255 W. 98th St. Owners Corp.*, 205 AD3d 594, 596 [1st Dept 2022] [the transfer of shares from the original sponsor to a successor sponsor maintained the status of the new holder as a holder of unsold shares, and registration as broker-dealer further conferred that status upon the transferee]). Finally, the cooperative documents imposed no other restriction on the sponsors' transfer of shares, except for the situation where the sponsors or their successors in interest became an occupant of an apartment covered by the propriety lease, which would result in termination of the status as a holder of unsold shares. That situation did not occur here, inasmuch as neither the sponsors nor the petitioner ever became an occupant of any of the apartments that are the subject of this dispute.

The court rejects the Apartment Corporation's alternative and narrow interpretation placed upon the cooperative documents' criteria for who can be a holder of unsold shares. The court also rejects the Apartment Corporation's misinterpretation of the sponsors' designation of the petitioner as a successor holder of unsold shares. The Apartment Corporation argued that the designation letter was nothing more than a statement identifying the petitioner as a purchaser and referencing a contract of sale. The Apartment Corporation, however, failed to acknowledge that the designation was not only titled "Designation of Purchaser As Holder of Unsold Shares Under Offering Plan," but also explicitly stated that "Sponsor hereby designates Purchaser as a Holder of Unsold Shares pursuant to the Offering Plan and AG regulations."

The Apartment Corporation does not deny that the sponsors were allowed to, and did in fact, become a holder of unsold shares in 1985, and did not extinguish that status by occupying any of the units in question at any point in time. Thus, given the sponsors' initial, valid status as holders of unsold shares, and the proper designation of the petitioner as a successor holder of unsold shares, there is no merit to Apartment Corporation's argument that petitioner cannot be deemed a successor holder of unsold shares.

The court finds unavailing the Apartment Corporation's contention that the petition must be dismissed because the petitioner improperly sought a preliminary injunction pursuant to the initiatory order to show cause. While the petitioner should have commenced a declaratory judgment action, then moved first for a preliminary injunction, and thereafter moved for summary judgment (see CPLR 3001), a CPLR article 78 proceeding can be initiated by either order to show cause or notice of petition (see CPLR 7804). Those methods are simply vehicles to bring the matter before the court, and a party may request a permanent injunction as final relief in both a CPLR article 78 proceeding and a declaratory judgment action. Hence, contrary to the Apartment Corporation's contention, there is no fatal infirmity in the manner in which the petitioner commenced this proceeding.

Inasmuch as the petitioner has not submitted any facts as to the extent of alleged monetary damages arising from the Apartment Corporation's conduct, or submitted facts that would even warrant a hearing on the matter, the court declines to award any such damages. The petitioner also did not submit an affirmation of attorneys' services or invoices supporting its claim for an award of attorneys' fees. With respect to the issue of attorneys' fees, the petitioner shall, if it be so advised, submit such an affirmation and invoices within 30 days of the entry of this decision, judgment, and order, after which the court shall determine whether an award is warranted and, if so, the extent of such an award.

In light of the foregoing, it is,

ORDERED that, on the court's own motion, the proceeding is converted into an action, the petition is converted into a complaint seeking a judgment declaring that the petitioner is a holder of unsold shares that is exempt from requirements and obligations that are not imposed upon holders of unsold shares; the initiatory order to show cause, petition, and supporting papers are deemed to constitute a motion for summary judgment on the complaint; and the answer and other opposing papers are deemed to constitute an answer to the complaint, opposition to the motion, and a cross motion for summary judgment declaring that the petitioner is not a holder of unsold shares and is not exempt from requirements and obligations that are imposed upon tenant-shareholders; and it is further,

ORDERED that the petitioner's converted motion is thereupon granted to the extent set forth below, and the motion is otherwise denied; and it is further,

ORDERED that the respondent's converted cross motion is thereupon denied; and it is further,

ADJUDGED and DECLARED that the petitioner, 320 West 87, LLC, is a holder of unsold shares allocated to apartment units 1CE, 22, 4W, 4W1, 6W2, 7W, 7W1, 8W2, and 9E at 320 West 87th Street, New York, New York, and is exempt from paying a transfer fee or "flip tax," seeking approval from the respondent's board of directors for each sublease and renewal of each sublease referable to those units, paying sublet fees referable to those units, obtaining approval from the respondent's board of directors for apartment renovations except as otherwise required where building systems, such as plumbing, electricity, heating, air conditioning, and the like are involved, and complying with any other procedural rules or restrictions applicable only to tenant-shareholders, and not applicable to holders of unsold shares, as delineated in the subject offering plan, proprietary lease, and/or by-laws; and it is further,

ADJUDGED and DECLARED that the petitioner, 320 West 87, LLC, is not obligated to pay so much of the invoice dated July 21, 2023, and delivered to it by the respondent, 320 West

87th Street, Inc., as purported to charge it for a flip-tax, for the failure to obtain the respondent's approval before subletting or renewing subleases with respect to the subject apartments, for sublet fees, or for failure to obtain the respondent's approval for alteration or renovation work in the subject apartments, except as otherwise required where building systems, such as plumbing, electricity, heating, air conditioning, and the like are involved, and so much of that invoice is declared to be null and void; and it is further,

ADJUDGED and DECLARED that the petitioner, 320 West 87, LLC, is not obligated to pay arrears or late charges with respect to the July 21, 2023 invoice, or any further invoices that purport to charge it for a flip-tax, for the failure to obtain the respondent's approval before subletting or renewing subleases with respect to the subject apartments, for sublet fees, or for failure to obtain the respondent's approval for alteration or renovation work in the subject apartments, except as otherwise required where building systems, such as plumbing, electricity, heating, air conditioning, and the like are involved, any such invoices are declared to be null and void, and the respondent is permanently enjoined from issuing any such further invoices.

This constitutes the Decision, Order, and Judgment of the court.

_____7/30/2024_____
DATE

_____
JOHN J. KELLEY, J.S.C.

| MOTION: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |
| CROSS MOTION: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |